UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                                          Case No. 8-19-72596-reg

Hamilton Road Realty LLC,                                          Chapter 7

                              Debtor.

-------------------------------------------------------------------X


MEMORANDUM DECISION GRANTING THE TRUSTEE'S MOTION
PURSUANT TO SECTIONS 105(a), 363 AND 704 OF THE BANKRUPTCY
CODE AUTHORIZING AND APPROVING THE SALE OF THE
DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS,
CLAIMS AND ENCUMBRANCES


     This matter is before the Court pursuant to the motion ("Motion") by Allan B.

Mendelsohn, the Chapter 7 trustee ("Trustee") to approve the sale of the non-residential real

property ("Property") owned by Hamilton Road Realty LLC ("Debtor") to a third party for

$1,920,000, free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code §§

363(b) and 363(f), subject to higher and better offers.  The Motion is opposed solely by the

Debtor on the basis that the Trustee cannot satisfy the requirements of § 363(f) with respect to

judicial liens and tax liens encumbering the Property.[1]  The Court agrees with the Debtor that the

Debtor has standing to object to the Motion and the Trustee cannot utilize § 363(f)(3) because

the face amount of the liens encumbering the Property exceed the sale price.  Nevertheless, the

Trustee has satisfied § 363(f)(5) as to the judicial liens and tax liens.

     The case before the Court presents the question of whether, in a chapter 7 liquidation, a

trustee may utilize § 363(f)(5) to sell property free and clear of nonconsensual judicial liens.  The

---

[1] Objections raised by other parties have been resolved.

Court's finding that the Trustee has met the requirements of § 363(f) is to a significant degree predicated on the specific facts and circumstances of this case, which involve a transfer of the Property from the principal of the Debtor, who held the Property in his individual name, to the corporate Debtor on the eve of the filing of this bankruptcy petition. At the time the Property was transferred it was subject to numerous liens that were not disclosed on the Debtor's schedules. Several of these judicial liens were placed on the Property to secure judgments obtained against the principal of the Debtor. While the judicial liens constitute "claims" in this Chapter 7 liquidation, the Debtor's principal and/or his spouse's liability under the judgments and the rights of their judgment creditors are unaffected by this bankruptcy. Because the nonconsensual judicial lienors could be compelled to take money in satisfaction of their liens and there are proceedings which could result in payment in full from a source separate and apart from the sale of the Property, the subject liens could, as a matter of law, be removed from the Property, thus fulfilling the requirements of § 363(f)(5).

Concomitantly, the Property may be sold free and clear of the tax liens pursuant to § 363(f)(5) because the Trustee may use § 724(b) to subordinate the tax liens, thereby compelling the tax lienors to accept money in satisfaction of their liens.

**Facts**

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 10, 2019 ("Petition Date"). According to the Debtor's Statement of Financial Affairs, the Debtor's equity holders are Sitara Khan and SMARS Holding LLC, each of whom own 50% of the Debtor.[2] Prior to the Petition Date, on May 30, 2006, Reza Naghavi and Sitara Khan (sometimes referred to herein as the "Original Obligors"), who are husband and wife, executed a

---

[2] Reza Naghavi has been described in certain pleadings filed by the Debtor as a member of the Debtor but the record is not clear with respect to her interest in the Debtor, if any.

promissory note in favor of JPMorgan Chase Bank, N.A. ("JPMorgan") in the original principal amount of $1,100,000.  As security for the repayment of the note, JPMorgan was granted a mortgage ("First Mortgage") on the Property, which was owned by one of the Original Obligors at the time.  The Mortgage was ultimately assigned to Select Portfolio Servicing, Inc. as servicer for U.S. Bank NA, as trustee for the Chase Mortgage Finance Corporation Multi-Class Mortgage Pass-Through Certificates, Series 2006 ("SPS"), which is the current mortgagee.

On or around September 7, 2007, Reza Naghavi deeded her interest in the Property to Sitara Khan, who became the sole owner of the Property.  Adv. Proc. No. 20-8004, Complaint [ECF No. 1].  On October 23, 2013, the mortgagee at the time commenced a foreclosure proceeding with respect to the Property.  On January 9, 2014, Sitara Khan transferred the Property to the Debtor pursuant to a deed.  Adv. Proc. No. 20-8004 [ECF No. 1].  The deed transferring the Property to the Debtor was recorded on April 9, 2019, one day prior to the Petition Date.  As a result, the Debtor's property is encumbered by the First Mortgage, and the Original Obligors remain personally liable for the debt.

On February 14, 2020, the Debtor's case was converted to a case under Chapter 7 and the Trustee was appointed.  On June 30, 2020, SPS filed a motion to vacate the automatic stay with respect to the Property, which was granted by order entered on July 28, 2020 [ECF Nos. 137, 141].

The Trustee now seeks authority to sell the Property to third parties pursuant to 11 U.S.C. § § 363(b) and (f), free and clear of all liens, claims and encumbrances.  The first Mortgagee has agreed to accept approximately $1,625,000 in full satisfaction of its claim and consents to the proposed sale, thus satisfying § 363(f)(2).   JPMorgan Chase Bank, N.A. ("Chase") filed opposition to the Motion, stating that it holds a junior mortgage on the Property in the amount of

$258,346.25. [ECF No. 173]. Chase has reached a settlement with the Trustee, and because

Chase now consents to the proposed sale of the Property, the Trustee has satisfied § 363(f)(2)

with respect Chase's lien against the Property.

The Debtor recently revealed that the Property is encumbered by the following judicial

liens:

Madonna Management Services: $89,000.00
Madonna Management Services: $112,805.39
Madonna Management Services: $1,051.31
New York Commercial Bank: $345,399.40
New York Commercial Bank: $167,242.37

(collectively, the "Judicial Lienors"). Each encumbrance was incurred when the Property was

owned by the principal of the Debtor. The Original Obligors remain indebted with respect to

each debt owed to the Judicial Lienors, and therefore each lienholder has the right to collect the

obligation from the Original Obligors. New York Commercial Bank filed a letter with the Court

reflecting its consent to the sale of the Property by the Trustee. [ECF No. 192].

The Debtor also recently revealed that the Property is encumbered by the following tax

liens:

United States of America – lien in amount of $275,772.37
United States of America – lien in amount of $38,062.00

(collectively, "Tax Lienors"). Like the claims of the Judicial Lienors, the claims of Tax Lienors

are personal obligations of the Original Obligors which arose while the Property was owned by

either the Original Obligors or by Sitara Khan. Aside from the Property, the Debtor's sole asset

is a bank account which has funds in the amount of $46,954.86.

The Tax Lienors were served with the Motion and did not file responsive papers. The

Judicial Lienors were not served with the Motion at the outset but based on the subsequent

events of the case it appears that the Judicial Lienors have received notice of the Motion. The

Debtor opposes the Motion on the grounds that the Trustee cannot satisfy any subsection of § 363(f) with respect to each lienor, based on the facts and the relevant case law.  The Trustee argues that the Debtor lacks standing to object to the Motion.  In the alternative, the Trustee claims that either he has obtained the consent of the Judicial Lienors, thereby satisfying section 363(f)(2), or that the Trustee can satisfy sections 363(f)(3) and/or (5).  Despite the Trustee's representation that the Judicial Lienors consent to the proposed sale, only counsel to New York Commercial Bank filed a letter reflecting such consent.  Because Madonna Management Services has not indicated its consent to the proposed sale and the Debtor challenges whether the letter from New York Commercial Bank's counsel sufficiently indicates the consent necessary under subsection 363(f)(2), the Court will treat the Judicial Lienors as if they have not provided adequate consent to the proposed sale.

## Discussion

### *a.   The Debtor has standing to object to the proposed sale*

As a threshold issue, the Trustee has raised whether the Debtor has standing to object to the sale of the Property.  Under Second Circuit authority, in order to have standing, a party must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court."  *Licensing by Paolo v. Sinatra (In re Gucci),* 126 F.3d 380, 388 (2d Cir. 1997) (quoting *Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.),* 111 F.3d 269, 273 (2d Cir.1997)).  A party is a person aggrieved if an order "diminishes their property, increases their burdens, or impairs their rights."  *Robb v. Harder (In re Robb)*, 534 B.R. 354, 357 (B.A.P. 8th Cir. 2015) (citing *Williams v. Marlar (In re Marlar),* 267 F.3d 749 (8th Cir. 2001)).  Courts have found that in the context of a proposed sale, a chapter 7 debtor has standing to object if there is evidence that a surplus is a reasonable

possibility. *See 60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*, 218 F.3d 109, 116 (2d Cir. 2000). The only possibility of a surplus in this case would be if the administration expenses of this case were reduced and/or if there were a successful objection to claims filed in the case. At this point, the dollar amount of administration expenses is not fixed, and it is not clear if there will be an objection to the claims filed in this case. While somewhat tenuous given the current liens on the Property, the Court finds that the Debtor has standing to object to the proposed sale. If the Trustee is asserting that sufficient equity exists to support a sale of the Property, then there is a possibility of a surplus for the benefit of the Debtor. This could be the case if the claims in the case were reduced via objection to claims, if the Original Obligors satisfied some portion of the judicial liens or tax liens encumbering the Properties or if the Debtor successfully objected to the administrative expenses of the Trustee and his professionals.

Turning to the Debtor's objections, the Court finds that the Trustee has provided a sufficient basis to grant the Motion under § 363(f) with respect to the Judicial Lienors and the Tax Lienors. The Court will review subsections (3) and (5), which are the subsections relied upon by the Trustee:

Section 363(f) provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> > (2) such entity consents;
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> > (4) such interest is in bona fide dispute; or
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Both the Debtor and the Trustee stipulate that only one subsection of § 363(f) need be satisfied as to each lien holder.

### b.   *Applicability of Section 363(f)(3)*

Under this subsection, the trustee may sell an asset over an objection if the Court finds that the sale price "is greater than the aggregate value of all liens on such property*." In re Beker Indus. Corp*., 63 B.R. 474 (Bankr. S.D.N.Y. 1986).  In order to determine whether the proposed sale satisfies this subsection, a thorough understanding of the meaning and application of this subsection is required.  The starting point of any statutory interpretations is with the language itself.  *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989).  The Court is also charged with giving each word in a statute meaning whenever possible.  *Chickasaw Nation v. U.S.*, 534 U.S. 84, 93 (2001) (citations omitted).  Courts interpreting this language generally fall into two camps.  The first group, which the Trustee urges the Court to follow, focuses on the word "value" and equates it with the word "value" as it is used in § 506(a).  Therefore, the value of any lien would be limited to the amount by which the claim is actually secured.  *In re Bos. Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010).  Because the "value" of the secured claim can never exceed the value of the collateral under § 506(a), the Trustee may sell the collateral free and clear of any liens encumbering the property while satisfying § 363(f)(3). This reading is supported by policy considerations that give meaning to the word "value" consistent with other Code provisions which refer to the term "value."  The leading cases utilizing this approach are *In re Beker Indus. Corp.,* 63 B.R. 474 and *In re Bos. Generating LLC,* 440 B.R. 302.[3]

---

[3] Other cases supporting this interpretation include *In re Terrace Gardens Park P'ship,* 96 B.R. 707 (Bankr. W.D. Tex. 1989); *In re Oneida Lake Dev., Inc.,* 114 B.R. 352 (Bankr. N.D.N.Y. 1990); *In re WPRV–TV, Inc.,* 143 B.R. 315, 320 (D.P.R. 1991); *Milford Group, Inc. v. Concrete Step Units, Inc. (In re Milford Group, Inc.),* 150 B.R. 904, 906 (Bankr. M.D. Pa. 1992); and *In re Collins,* 180 B.R. 447, 450–51 (Bankr. E.D. Va. 1995).

The other line of cases, which the Debtor urges the Court to adopt, interprets the word "value" as equivalent to "face value." Under this approach, the proposed sale price of the property must be "greater than" the aggregate actual amount of all liens encumbering the property. These courts first distinguish the use of the term "value" in this section compared to its use in § 506(a) and find that these terms are not synonymous given the usage and purpose of the statutes. Section 506(a) discusses the value of a creditor's interest in collateral, i.e. the amount of the allowed claim, while § 363(f)(3) refers to the value of the lien itself. *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments*) 159 B.R. 821, 827 (N.D. Ill. 1993). Courts utilizing this approach find that this is a more natural interpretation of the statute that does not read the language in an overly broad fashion. As the Ninth Circuit held in *In re PW, LLC*, the other courts' interpretation expands § 363(f)(3) too far, thereby rendering this limiting subsection meaningless. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC),* 391 B.R. 25, 40 (B.A.P. 9th Cir. 2008). The Ninth Circuit further held that if Congress meant to give this section a broad interpretation, it would have employed more direct language.

A straightforward reading of the text of § 363(f)(3) supports equating "value" with face value. This subsection requires that the purchase price be "greater than" the value of the liens, not that they be equal. As stated by the Court *In re PW, LLC*, if the "aggregate value of all liens" means the aggregate amount of all allowed secured claims as used in § 506(a), then the paragraph could *never* be used to authorize a sale free and clear in circumstances like those present here; that is, when the claims exceed the value of the collateral that secures them. 391 B.R. at 40. In any case in which the value of the property being sold is less than the total amount

of claims held by secured creditors, the total of all allowed secured claims will *equal,* not exceed, the sales price, and the statute requires the price to be "greater than" the "value of all liens." [4]

The Court agrees with the reasoning of the *In re PW, LLC* decision and other similar cases. The plain language of a statute governs, and the Court must try and give all provisions of a statute meaning. If the Court were to agree with the Trustee's interpretation, the Court would not only have to ignore the words "greater than" but would have to substitute them with "equal to." Under this approach, the plain language of the statute would be supplanted in favor of an interpretation that supports the outcome urged by the Trustee. As this Court has previously held, it is not within this Court's province to alter or amend the language of a statute. If plain, the language of a statute is dispositive and conclusive. *Mendelsohn v. Cent. Garden & Pet Co. (In re Petland Discs. Inc.)*, Nos. 8-19-72292-reg, 20-08088-reg, 2021 Bankr. LEXIS 197 (Bankr. E.D.N.Y Jan. 26, 2021).

The Court finds that (i) § 363(f)(3) is clear and unambiguous, and (ii) the amount of the purchase price must be *greater than* the amount of the liens, not equal to the amount of the liens. The Trustee's interpretation of this subsection is not supported by the actual language of this statute, and for these reasons, the Court finds that the Trustee may not use this subsection to obtain approval of a sale of the Property free and clear of all liens, claims and encumbrances.

---

[4] Other cases supporting this interpretation include *Richardson v. Pitt County (In re Stroud Wholesale, Inc.),* 47 B.R. 999, 1002 (E.D.N.C. 1985), *aff'd mem.,* 983 F.2d 1057 (4th Cir. 1986); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments),* 159 B.R. 821 (N.D. Ill. 1993); *In re Perroncello,* 170 B.R. 189 (Bankr. D. Mass. 1994); *In re Feinstein Family P'ship,* 247 B.R. 502 (Bankr. M.D. Fla. 2000); *In re Canonigo,* 276 B.R. 257 (Bankr. N.D. Cal. 2002); *Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell, LLC),* 298 B.R. 527 (D.N.J. 2003); *In re Healthco Int'l, Inc.,* 174 B.R. 174 (Bankr. D.Mass. 1994); *In re Nance Properties, Inc*. 2011 WL 5509325 (Bankr. E.D.N.C. 2011); *In re Jaussi,* 488 B.R. 456 (Bankr. D. Colo. 2013*); and In re Flour City Bagels, LLC*, 557 B.R. 53 (Bankr. W.D.N.Y. 2016).

### c.  Applicability of Section 363(f)(5)

This subsection permits the Trustee to sell property free and clear of all liens, claims and interests if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."   The elements of this statute are as follows:

a.   (1) a proceeding exists or could be brought,
b.    in which (2) the entity could be compelled to accept a money satisfaction
c.  of (3) its interest

*In re Hassen Imports P'ship,* 502 B.R. 851, 858 (C.D. Cal. 2013) (citing to *In re PW, LLC,* 391 B.R. at 41).  The existence of judicial and nonjudicial foreclosure and enforcement actions under state law, among other proceedings, have been held to satisfy § 363(f)(5).  *In re Bos. Generating LLC*, 440 B.R. at 333.  Courts have also relied on cramdown proceedings in bankruptcy to satisfy the "proceeding" requirement. *In re Terrace Chalet Apartments, Ltd*. 159 B.R. at 829 (other citations omitted).

The Court will first consider whether nonconsensual judicial liens fall within this subsection.  The specific judicial liens at issue in this case resulted from judgments entered by a court against the Debtor's principal and/or his spouse.  These judgments were then recorded as liens on the Property and all other property owned by the Original Obligors as permitted under New York law.  At the time the Property was transferred to the Debtor, without notice to the judgment creditors and without subsequent disclosure of the existence of the liens on the bankruptcy schedules, the liens had attached as of record and the Debtor acquired the Property burdened by the liens despite having no other legal obligation on the judgment.  The Judicial Lienors have rights under state law against the Original Obligors to garnish or levy other property of the Original Obligors to satisfy their judgments.  The liens, which are the subject of

the decision, were placed on the Property to secure payment of the underlying judgments.

Therefore, a satisfaction of the judgment would result in a satisfaction and removal of the subject

liens.  The Debtor in the instant proceeding has no other obligation to the Judicial Lienors.  The

question for the Court to consider is whether there are alternative legal proceedings by which the

Judicial Lienors could enforce their rights against the Debtor's principal, and if successful, could

be compelled to release the subject liens.  The Debtor has interposed two reasons for finding that

§ 363(f)(5) does not apply to the Lienors.  First, the Debtor claims that this subsection does not

apply to lien holders but applies to parties with different types of interests in real property, such

as an easement or a covenant.  Second, the Debtor asserts that there is no proceeding by which

the Judicial Lienors could be compelled to accept a money satisfaction in exchange for their

liens.  The Court disagrees with the Debtor as to both points.

    The Debtor asserts that lienholders do not fit within the term of parties with an "interest"

in the Property.  The Debtor points to easements or covenants as the interests covered by this

subsection, relying primarily on *In re Beker Indus. Corp.*, 63 B.R. 474.  The court in *Beker*

determined that § 363(f)(5) does not apply to liens at all, which it justified by concluding that a

broader reading would swallow up (f)(1) through (f)(4).  *Id*. at 474 (citing to *In re Stroud*

*Wholesale, Inc*., 47 B.R. 999, 1003 (E.D.N.C. 1985)).  *See also In re Canonigo*, 276 B.R. 257,

265 (Bankr. N.D. Cal. 2002) (mentioning that the *Beker* decision takes "the most provocative

view").  The Court disagrees with the *Beker* decision on this point as this distinction is supported

neither by the plain language of the statute nor by Title 11 itself.  A lien is defined by 11 U.S.C.

§ 101(37) as a "charge against or *interest in* property to secure payment of a debt or performance

of an obligation." (emphasis added).  It follows that "a lien is but one type of interest."  *In re PW,*

*LLC*, 391 B.R. at 42.  The lien, by itself, does not create an interest.  However, the lien functions

as a form of security on behalf of an interest.  This Court's finding is aligned with the Second

Circuit and other courts, including *In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir. 2009) *cert.*

*granted, judgment vacated sub nom. Indiana State Police Pension Trust v. Chrysler LLC*, 558

U.S. 1087 (2009) and *vacated sub nom. In re Chrysler, LLC*, 592 F.3d 370 (2d Cir. 2010).  These

courts have found that Congress intended "interest" to have an expansive scope*.  See In re PW,*

*LLC*, 391 B.R. at 41; *United States v. Knox-Schillinger (In re Trans World Airlines, Inc.)*, 322

F.3d 283 (3d Cir. 2003); *In re Ricco, Inc.,* No. 10-23, 2014 WL 1329292, at *3 n.5 (Bankr.

N.D.W. Va. Apr. 1, 2014).  The facts of this case indicate that the judicial liens placed on the

Debtor's property represent the Judicial Lienors' "interests."  Therefore, the fact these

encumbrances are judicial liens does not preclude the Trustee from seeking to authorize the sale

under § 363(f)(5).

The second point raised by the Debtor is that there is no legal or equitable proceeding

pursuant to which the Judicial Lienors could be compelled to accept a money satisfaction of their

claims.  According to the Debtor, the Trustee must demonstrate that there is some proceeding by

which the Judicial Lienors could be so compelled, and it requires full satisfaction of the lien.

The Court agrees that there must be some equitable or legal proceeding by which the Judicial

Lienor can be compelled to accept money in full satisfaction of its lien.  The specific question

before the Court is whether the statute mandates that the legal proceeding be limited to a

proceeding involving the Property on which the lien is recorded or does the term "proceeding"

apply to any actual or potential proceeding which would permit the Judicial Lienors to enforce

their rights.  This is a critical point in this case because the Debtor is not legally obligated to the

Judicial Lienors and a liquidation of the Debtor has no impact on the Judicial Lienors' rights to

proceed against the Original Obligors under applicable non bankruptcy law.

The word "satisfaction"— when used in the context of "satisfaction of [an] interest"— connotes giving something of value in exchange for terminating an outstanding obligation. Black's Law Dictionary defines satisfaction as the "giving of something with the intention, express or implied, that it is to extinguish existing legal or moral obligation." *Satisfaction,* BLACK'S LAW DICTIONARY (9th ed. 2009). Here, the word "satisfaction" is modified by the word "money." Therefore, the plain language must refer to the giving of *money* with the intention that it is to extinguish existing a legal or moral obligation. If, in a hypothetical proceeding such as a foreclosure, the junior lienholder's interest is extinguished without any form of monetary satisfaction, i.e. its interest was wiped out, the foreclosure would *not* compel the junior lienholder to accept a "money satisfaction" because there the funds are nonexistent. Therefore, § 363(f)(5) may not be satisfied in such an instance. *See In re Hassen Imports P'ship,* 502 B.R. at 861.

However, if there is a proceeding by which the Judicial Lienors could be compelled to accept money in exchange for their liens, even if it is not the entire amount, this would satisfy the requirements set forth in § 363(f)(5). The Judicial Lienors cannot bring a foreclosure action under New York law, nor can they commence a UCC proceeding with respect to the Property. Likewise, cramdown is not a mechanism that could be used in a Chapter 7 case. The Judicial Lienors could, under certain circumstances, bring a proceeding under the N.Y. C.P.L.R. §§ 5235 and 5236 to compel the Sheriff to conduct a sale of the Property, but at any point prior to bringing such action, the Judicial Lienors could be forced to accept the amount owed in full. Upon receipt of such payment, a satisfaction of lien could be issued which would effectively terminate their liens on the Property.

While these proceedings outlined above all relate to the Property, the statute does not specify what type of proceeding must take place, nor does it require that the proceeding be one specified under the Bankruptcy Code – it merely requires the possibility of a proceeding under which the Judgment Lienors can be compelled to accept money in satisfaction of their interest. In the instant case, the Judicial Lienors' interests are in the form of money judgments with respect to the Original Obligors, which may have become *in-rem* interests with respect to other properties owned by the Original Obligors when the judgments were recorded.  At any point, if the Original Obligors were to offer to pay the Judicial Lienors in full, the Judicial Lienors would be compelled to accept a monetary payment in lieu of their liens on the Property, albeit from another source.  If the Judgment Lienors have similar liens on other property held by the Original Obligors and were successful in collecting on the judgment, any liens on any other property, including the Property, would be released.

It is important to note that this is a liquidation, not a reorganization, which would have broadened the types of proceedings that could fit within subsection (5) in this case.  What makes this case even more unique are its specific facts, where the Debtor is not liable for the underlying obligations owed to the Judicial Lienors.  The only avenue for satisfying the Judicial Lienors' claims in this bankruptcy case is through sale of the Property with proceeds sufficient to pay them off.  However, the Original Obligors remain liable on the debts, which is another source to which the Judicial Lienors may turn.  Although the sale of the Property will not result in payment of the Judicial Lienors' claims in full, the Judicial Lienors have a realistic and viable avenue to collect such payment.  They are legally permitted to proceed against the Original Obligors by any means allowed under applicable law.  Because the Judicial Lienors have these rights and if

they were successful, they would be compelled to accept money in exchange for their liens, full satisfaction of the claims by the Debtor is not required.

Turning to the Tax Lienors, they were served with the Motion and did not file opposition to the Motion.  While the Debtor may have standing to object to the Motion, it is not at all clear that the Debtor may object on behalf of the United States or any governmental agency.  Notwithstanding this problem, the Court will consider these issues raised by the Debtor. Again, the Debtor alleges that the Tax Lienors do not fall within any subsection of § 363(f) and therefore the Trustee cannot seek to sell the Property.  For the following reasons, the Court disagrees and finds that § 363(f)(5) applies to the Tax Lienors.  First, tax liens qualify as "interests" in property for the reasons discussed above.  Second, because the Trustee may utilize Bankruptcy Code § 724(b) to subordinate the tax liens encumbering the Property, which will result in receipt of money by the Tax Lienors in exchange for their liens, there is a proceeding by which the United States may be compelled to accept a monetary satisfaction of its interests in the Property.

Section 724(b) provides the following: distribution for tax liens shall be distributed:

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1)(C) or 507(a)(2) (except that such expenses under each such section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

11 U.S.C. § 724(b).  The effect of this section is to subordinate payment of tax liens to the payment of administrative expenses, up to the amount of the tax liens, while leaving senior and junior consensual lienholders and unsecured creditors unaffected.

The Debtor claims that before a Trustee can utilize the subordination provisions of section 724(b), the Trustee must first exhaust the unencumbered assets of the estate to satisfy administration claims prior to "resorting to the priming option" of taxing administration expenses against the proceeds encumbered by a tax lien. *In re Dowco Petroleum, Inc.*, 137 B.R. 207, 210 (Bankr. E.D. Tex. 1992).  The Court disagrees with this analysis, which does not have a strong following among other courts. *See In re Southeast R.R. Contractors, Inc.*, 235 B.R. 619 (Bankr. E.D. Tenn. 1996) (finding that the statute is unequivocal and requires that the distribution scheme set forth in section 724(b) must be followed); *Wurst v. City of New York* (*In re Packard Properties, Inc.*), 112 B.R. 154, 158–59 (Bankr. N.D. Tex. 1990) ("[t]ax liens were chosen by Congress as a means to pay administrative expenses . . . with a tax lien on it, § 724(b) provides for the taxing authorities to bear the cost to some extent.").  Therefore, the Court declines to follow *In re Dowco Petroleum, Inc.*

Because section 724(b) constitutes a "proceeding" that the Trustee may utilize to compel the Tax Lienors to accept a monetary satisfaction of its lien, the Trustee has satisfied § 363(f)(5) with respect to the Tax Lienors.  At least one other court considering this precise issue has overruled objections by tax lienors to proposed sales where there were insufficient funds to pay the subordinated tax liens in full from the sale proceeds based on the application of § 363(f)(5). *In re A.G. Van Metre, Jr., Inc.*, 155 B.R. 118 (Bankr. E.D. Va. 1993).  As a result of the

application of this provision, to the extent there are insufficient funds to pay the Tax Lienors in full after paying the mortgagees and administration claims up to the amount of the tax liens encumbering the Property, the remainder will be deemed unsecured.  Any amounts still due and owing may be paid from that separate pool of funds.

**Conclusion**

For the reasons set forth in this Memorandum Decision, the Motion is granted and the Debtor's objections are overruled.  An order consistent with this Memorandum Decision was entered on April 20, 2021.



**Dated: Central Islip, New York**
**April 26, 2021**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**